Peck *v.* Ledwidge.

---

Joseph W. Peck, Appellant, *v.* John Ledwidge, Appellee.

APPEAL FROM MARION.

Rent does not stop, because the premises leased are receiving repairs. Nor is a lessee released from paying rent because the premises are injured during tenancy.

25  109
22a  454

25  109
175  519

25  109
100a  562

25  109
115a  571

THE appellant leased to appellee a steam mill for twelve months. The lease was in the usual form. The rent was to be paid quarterly, at the rate of five hundred dollars per annum. The mill was to be delivered up at the end of the term in as good repair as when it was received, reasonable wear and unavoidable accidents excepted. The lessee brought his action for repairs, to the extent of $160, before a justice of the peace, crediting the lessor with ninety-five dollars on account of rent, leaving due to lessee, on account of repairs, sixty-five dollars. Lessor filed his claim for rent, amounting to $156.91.

Ledwidge, the plaintiff below, filed his account with Marshall, a justice of the peace. Account for repairing mill, one hundred and sixty dollars ($160). Credit by rent of mill, ninety-five dollars ($95). Balance claimed, sixty-five dollars ($65).

Summons issued in usual form. Peck, defendant below, files his account for rent of mill three months and twenty-three days, at forty-one dollars and sixty-six cents ($41.66) per month, $156.91.

Trial, and judgment for the defendant below against plaintiff, for costs, upon the ground that the court could not render judg-

ment for $156.91, amount of defendant's claim. Cause appealed by Ledwidge, plaintiff below. Defendant below, on the trial, admitted that the plaintiff. had expended, in repairing mill, $157.16.

It was admitted by plaintiff below that he had occupied the mill of defendant below for three months and twenty-three days, under the lease, and then surrendered the key and premises to defendant; that ten weeks of the time the mill was running, and the remainder it was being repaired.

The plaintiff below then called *Silas L. Bryan* as a witness, who testified that Ledwidge had called on him in the fore part of the winter of 1859 and 1860, and informed witness that some part of the boiler in the mill had given away, and that the mill would have to stand still till repaired; that it would cost some thirty dollars to repair it. He wished to know of witness if he should make the repairs at the expense of Mr. Peck. Witness stated to him that he did not know whether Mr. Peck was bound to repair or not, but that plaintiff should repair the boiler, and that Mr. Peck would be down from Chicago soon, and that if he was bound in the lease to repair the mill, he would pay him for the repairs, or deduct it from his rent; but that if he was not bound by the lease to repair, he would not pay for the repairs. Witness and his partner acted as the agents of Mr. Peck in leasing the mill, and drawing the lease. · Witness gave it as his opinion to Ledwidge that Peck was not bound to repair, but that Peck would be down soon, and they could settle it, and told Ledwidge he could do the repairs.

*Crawford Hardcastle* testified: He was a mechanic. The breakage on the boiler was not the fault of Ledwidge. Witness worked in repairing mill for plaintiff. Weather was cold and disagreeable. Witness was working on the mill, and Peck, the defendant, came round once or twice or several times, and remarked to or told witness to make a good job of work. One of the times Peck told him to put in the valve, which he would not have done but for Peck's order. He was at the mill.

The court then instructed the jury for the plaintiff as follows:

1st. That if the jury believe, from the evidence, that the plaintiff did the repairs to the mill at the instance, and by the authority of Peck, or his agent, the plaintiff is entitled to recover for the same what the repairs are reasonably worth.

2nd. That if the jury shall find, from all the evidence and circumstances proved in the case, that the repairs were made by authority of the defendant Peck, or his agent Bryan, as a matter of contract, then he is entitled to recover.

3rd. That if the jury find, from the evidence, that Peck was about the mill while the repairs were being made, and gave

directions as to how the work should be done, this is a fact which may be considered by the jury ; and if they find, from a view of all the evidence, that the work was done by authority of Peck or Bryan, as a matter of contract, the plaintiff should recover.

4th.   That if the jury believe, from the evidence, that there was either an express or implied agreement of Peck, or his agent, to pay the plaintiff for their repairs, they should find for him the value of said repairs.

5th.   That if the accident to the mill was unavoidable, then the plaintiff was not to repair; and if he did repair at the instance of the defendant or his agents, then the plaintiff is entitled to recover.

To the giving of each of the said instructions to the jury, the defendant, by his counsel, at the time excepted, and prayed that this his bill of exceptions should be made a part of the record.

The court, at the instance of the defendant's counsel, instructed the jury,

1st.   That if there was a written lease or contract between the parties, in reference to the renting of the mill, and that defendant Peck did not in such lease or contract agree to keep the mill in repair, then he was not liable for any amount that the plaintiff may have expended in repairing the mill ; to which the court added these words, " unless the jury believed, from the evidence, a subsequent agreement to pay for the repairs was made by defendant;" to the making of which addition by the court, defendant at the time excepted.

2nd.   That in law, Peck, the defendant in this action, was not bound to keep the mill in repair while it was occupied by the plaintiff; and unless the plaintiff can show a contract to repair, on the part of Peck, the jury must find the issue in the case for the defendant.

3rd.   That if, under the proof, the jury believe the plaintiff cannot recover for the work in repairing the mill, and the proof shows that the defendant's claim for rent is more than one hundred dollars, then the jury must find for the defendant a verdict for costs simply against the plaintiff, but if the defendant's claim should, from the proof, turn out to be less than one hundred dollars, the jury should find for the defendant such amount not exceeding one hundred dollars, as the proof may show.

4th.   That Peck, the defendant, could not make himself liable to the plaintiff for work done by his (plaintiff's) hands on the mill, by simply saying to them to make a good job, and that in order to make Peck liable to the plaintiff, there must have been such an understanding on the part of Peck as

Peck · e .

amounted to a contract to pay either plaintiff, or the hands, for the work done.

5th.   That plaintiff was liable for the whole time he occupied the mill, and that he is not entitled to any abatement from the rent, unless he has shown by the proof that the defendant expressly agreed that the plaintiff should not be liable for the rent while the mill was undergoing repairs; to which instruction the court added this qualification, " unless the jury believe that defendant is liable for the repairs by contract subsequent to the lease;" to which modification the defendant at the time excepted.

6th.   That if the plaintiff undertook the repairs by a conditional authority from Bryan, agent, that the defendant would pay for the same, provided he was bound to do so by the terms of the written lease between the parties, then he can recover only by the terms of such written lease, and is bound by the terms of such written lease.

7th.   That if the mill became out of repair, while in the hands of the plaintiff, and the terms of the lease required him to surrender the mill in as good repair as when he received it, it was his duty to put the mill in repair before surrendering it.

Which seventh and last instruction asked by the defendant, the court refused, and wrote thereon abstract law and refused; to which refusal the defendant at the time excepted.

The jury brought in a verdict for sixty-five dollars for the plaintiff below.

Defendant entered motion for new trial.   Motion overruled, and judgment on verdict, and defendant prayed an appeal.


Silas L. Bryan, for Appellant.


N. Haynie, for Appellee.              ∘


Caton, C. J.   The qualification to the fifth instruction, asked by the defendant, was wrong.   It told the jury that if they found that the defendant had agreed to pay for the repairs of the mill, then they should not allow rent during the suspension for the repairs.   This is a misconstruction of the lease, or of the supposed subsequent agreement to pay for the repairs.   The lease is in the ordinary form, and binds the lessee to pay the lessor rent during the whole term, no matter what might befall the premises.   There is then nothing in the lease to justify this qualification.   Nor does it by any means follow that the rent should stop if the lessor had agreed to pay for the repairs.

There is not a particle of proof that a word was ever said about the suspension of the rent.

If the damage to the mill was the result of accident, and without the fault of the lessee, then, by the terms of the lease, he was not bound to repair, nor was the lessor. The lessee was at liberty to make the repairs at his own cost, and then enjoy the premises beneficially to the end of his term, or he might let them lay idle to the end of the term and surrender them up in their damaged state, but he must pay rent the same as if the accident had not happened. And the lessor might agree to pay for the repairs for the sake of receiving them at the end of the term in their improved condition, but he was bound to pay no more than he agreed to pay for the repairs. He might, no doubt, in consideration of the repairs, have agreed to suspend the rent as well as to pay for the repairs, but agreeing to do one was not an agreement to do both.

The court erred in qualifying the fifth instruction in the way it did. The proof of any agreement by the lessor to pay for the repairs is very slight indeed, if there is not an absolute want of any such proof, and we are not prepared to say that we should not reverse the judgment on that account, were there no other question in the case.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*